UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:

**LAQUITA NICOLE DAVIS**　　　　　　　　　　**CASE NO. 10-10222**
DEBTOR　　　　　　　　　　　　　　　　　　　CHAPTER 7

**TOWER CREDIT, INC.**
PLANTIFF

V.　　　　　　　　　　　　　　　　　　　　　　**ADV. NO. 10-1034**

**LA'QUITA NICOLE DAVIS**
DEFENDANT

### MEMORANDUM OPINION

Tower Credit, Inc. ("Tower") objects to the discharge of chapter 7 debtor La'Quita Nicole Davis under 11 U.S.C. §727(a)(4)(A). Tower alleges that the debtor knowingly and fraudulently claimed to be separated from her husband to avoid including her husband's income in order to qualify for chapter 7 relief. The debtor responds that her errors were inadvertent.

The evidence supports a finding and conclusion that the debtor lacked the fraudulent intent section 727(a)(4)(A) requires, and therefore is entitled to a discharge.

### FACTS

Tower holds a judgment against the debtor for $10,445.61 plus interest, attorney's fees and costs based on two promissory notes.[1] When Davis was unable to negotiate a reduction in Tower's garnishment, she retained Wendy Ogden and the Grand Law Firm to file a bankruptcy.

---

[1] April 23, 2007 judgment, Baton Rouge City Court, Case Number 0612-09874 ( Exhibit T-8). The judgment is also against the debtor's estranged husband, John Bourgoyne, who co-signed the notes.

Davis told Ogden at their first meeting that she was married,[2] but explained to the lawyer that her marriage was troubled even though the couple still lived together off and on. In fact, the debtor gave Ogden the same address for herself and Bourgoyne. Ogden wrote "Not filing: separate households" in the margin of the interview form,[3] and told Davis that because they were living apart she need not list her husband's income in her bankruptcy. Ogden also concluded that chapter 7 was appropriate and filed the debtor's petition on February 22, 2010.

The debtor's schedule I conspicuously disclosed that Davis was separated and had three dependent minor children. It did not list her husband John Bourgoyne or disclose his income.[4] In fact, Bourgoyne is identified on the statement of financial affairs at question 16 as the debtor's "estranged husband."[5] Davis's statement of monthly income and means test calculation form[6] shows the debtor as "unmarried" and also omits her husband's income. The debtor's current monthly income annualized is $48,193.08, substantially less than the applicable median family income for a Louisiana family of 4, therefore qualifying Davis for chapter 7 relief.[7]

---

[2] The debtor brought her husband's pay stubs to the interview because, as she stated at trial, she anticipated that she would have to include his income in her case. Copy of October 21, 2010 paycheck for John Bourgoyne from Capitol Coatings and Linings for $630.17 (Exhibit T-21).

[3] Grand Law Firm client interview sheet dated February 2, 2010 ( Exhibit T-9).

[4] Schedule I (Exhibit T-15). The instructions for filing out schedule I state "[t]he column labeled 'Spouse' must be completed in all cases filed by joint debtors and by every married debtor, whether or not a joint petition is filed, *unless the spouses are separated and a joint petition is not filed*." (Emphasis added). See B61 (Official Form 1) (12/07).

[5] Statement of Financial Affairs (Exhibit T-17).

[6] Chapter 7 Statement of Current Monthly Income and Means Test Calculation, B22A Official Form 22A (Chapter 7) (12/08) (Exhibit T-18).

[7] Exhibit T-18, p. 3. The median family income for a Louisiana family of four was $66,256 when the debtor filed chapter 7. This figure is obtained from the United States Trustee Program's website. United

The debtor testified at the meeting of creditors that she was married but lived separately from her husband.[8] When the trustee later asked Davis about the ownership of a vehicle listed in her schedules, she replied that the car was her husband's and that she was married.[9] At that point an unidentified person[10] stated that the debtor and her husband were separated.[11] In response to Tower's representative's question the debtor stated that she and her husband had been separated since July 2009.[12]

Davis testified at trial that she and Bourgoyne have an abusive relationship that began even before their marriage, and that at one point before she left he had "taken her head and put it through the wall." She testified that it was common for her to stay somewhere other than the marital domicile "since the first day he put his hand on me." She explained that after she first moved from the marital home in July 2009, she may have returned a few times but that she and Bourgoyne completely separated in September 2009. According to Davis, she and her husband remained separated at the time of the bankruptcy filing but reconciled in March 2010 after taking part in counseling at their church.

During the couple's separation the debtor moved among three different places: 3090 Lafiton Lane (the marital residence); 65720 Kurk Creek Lane (a mobile home the

---

States Trustee Program/Department of Justice, *Means Testing*, *available at* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm. (last updated March 15, 2011, 11:27 AM).

[8] Transcript of March 16, 2010 meeting of creditors, p. 3, ll. 13-17 (Exhibit T-19).

[9] Transcript of meeting of creditors, p. 8, ll. 4-25.

[10] The transcript reflects that only the trustee, the debtor, Tower's representative and an unidentified person were present at the 341 meeting. That supports an inference that the unidentified speaker was the debtor's attorney.

[11] Transcript of meeting of creditors, p. 8, line 11.

[12] Transcript of meeting of creditors, p. 16, line 11-14.

debtor rented from her mother-in-law); and 25340 Magnolia Lane (her mother's residence). The debtor stated she lived at the Lafiton Lane address only when her husband was absent or when they were "getting along," which is consistent with the debtor's testimony at a Rule 2004 examination Tower conducted. She testified that during January and February 2010, her husband spent between five and nine days each month at the Lafiton Lane residence, and she would be there on the other days when he was not.[13]

Davis acknowledged that she should not have indicated on the chapter 7 means test that she was not married but explained that before filing bankruptcy she had no idea what a "means test" was or the significance of median family income. The debtor also admitted that she did not read her bankruptcy documents before she signed them, and that she relied on her attorney for their accuracy.

At trial and in her answer to Tower's complaint, Davis stated that Bourgoyne works irregularly and suffers from Crohn's Disease. She testified that he gives her whatever extra money he has from his paycheck but that she pays all the family bills. According to Davis's answer, her husband earned $13,967 in 2009.[14] Davis herself performed a means test calculation adding Bourgoyne's monthly 2009 income to her own

---

[13] Transcript of July 12, 2010 Rule 2004 examination p. 42, l. 16 through p. 43, l. 11. Davis admitted at trial that a video taken by Tower's investigator in March 2010 – after she filed bankruptcy – accurately showed that both her car and her husband's car were parked at the Lafiton Lane residence at the same time over a period of several days. This is not inconsistent with the debtor's prior testimony that she and her husband reconciled in March 2010.

[14] John Bourgoyne's social security earnings statement dated April 29, 2010 listing his yearly earnings from 1997 was attached to the debtor's answer and reflects that his 2009 earnings were actually $13,224. Answer, p. 5 (P-5).

4

income (plus an extra $500 added to the total):[15] the resulting annualized current monthly income was still $771.92 less than the applicable median family income.[16]

## ANALYSIS

Bankruptcy Code section 727(a)(4) commands the court to "grant the debtor a discharge, unless … the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account…."  To prevail on its discharge objection Tower must prove that:

>   (1) the debtors made a statement under oath;
>
>   (2) the statement was false;
>
>   (3) the debtors knew the statement was false;
>
>   (4) the debtors made the statement with fraudulent intent; and
>
>   (5) the statement related materially to the bankruptcy case.

*In re Pratt*, 411 F.3d 561, 566 (5th Cir. 1992).

No party disputes that Tower has established the first three elements of its claim. The issue is whether that the debtor's false statements were material and whether she made them with fraudulent intent.

*1. Materiality*

---

[15] Davis stated that the reasons she added another $500 to the total of the combined monthly income was to satisfy herself that she was eligible for chapter 7 under the means test.

[16] Debtor's means test calculation, p. 3 (Exhibit T-20).  Davis testified at trial that after Tower filed this case she educated herself about the means test using internet resources.  However, Davis used an incorrect median family income in her calculations.  The Louisiana median family income for a family of five for the applicable period, according to the information posted on the United States Trustee website was $73,156. United States Trustee Program/Department of Justice, *Means Testing*, *available at* http://www.usdoj.gov/ust/eo/bapcpa/meanstesting.htm. (last updated March 15, 2011, 11:27 AM).  Using this figure, the combined annualized current monthly income for Davis and Bourgoyne would have been $7,898.92 less than the median income.

5

A debtor's statement or omission materially relates to a case if it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Beaubouef*, 966 F.2d 174, 178 (5th Cir. 1992). Louisiana is a community property state in which each spouse owns an undivided one-half interest in the community. La. Civ. Code art. 2336.[17] Thus, Davis's estate potentially could have included half of her husband's pre-petition property. Married debtors also must include a spouse's income in making the means test's monthly income calculations; and a non-filing spouse's income may affect the debtor's eligibility for chapter 7 relief and creditors' recovery.[18]

Accordingly, a Louisiana debtor's marital status is material to the determination of the estate's assets and to the debtor's eligibility for chapter 7 relief. Tower has proven this element of its case under §727(a)(4)(A).

### 2. *Fraudulent Intent*

Tower's final task was to establish that Davis made her false statements with fraudulent intent. In this it has fallen short of its goal.

A bankruptcy court will not deny a debtor's discharge under section 727(a)(4)(A) if the debtor's false statement resulted from a "simple or honest mistake or inadvertence." *In re Townsley*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996), *citing In re Bodenstein*, 168 B.R. 23, 32 (Bankr. E.D. N.Y. 1994). Rather, to sustain an objection to discharge under §727(a)(4)(A) the debtor must have willfully made a false statement with intent to

---

[17] Only a judgment of divorce or separation of property terminates a Louisiana community property regime. La. Civil Code art. 2356.

[18] The means test form states that married debtors who are not filing jointly and have not declared legally separate households must list both the debtor's and their spouse's income. Chapter 7 Statement of Current Monthly Income and Means Test Calculation, B22A Official Form 22A (Chapter 7) (12/08), p.2.

6

defraud his creditors. *In re Townsley*, 195 B.R. 54, 65 (Bankr. E.D. Tex. 1996), *citing In re Bodenstein*, 168 B.R. 23, 32 (Bankr. E.D. N.Y. 1994).

The evidence established that Davis informed her bankruptcy lawyer that she and her husband were on bad terms and not living together.  Based on that, debtor's counsel prepared a means test that listed the debtor as "unmarried"; schedules reflecting that she was separated or estranged from her husband; and a means test that omitted the husband's income.  The debtor admitted signing those documents under penalty of perjury even though she had not actually reviewed them.

Tower contends that these actions constitute reckless indifference and therefore prove the debtor's intent to deceive.  Tower also maintains that the debtor constantly changed her testimony about whether she and her husband were actually living separately, which displays reckless indifference supporting a finding that she intended to defraud her creditors.  The evidence, including Davis's testimony (which the court finds credible), proves otherwise.

Davis testified without contradiction that she told her bankruptcy lawyer she was married but also that her marriage was troubled.  She also gave the lawyer proof of Bourgoyne's income and provided the attorney the same address for both herself and her husband.  She also came to her lawyer with information about her husband's income in the belief that it would be necessary for the bankruptcy filing.  Her bankruptcy lawyer took the information from Davis, and noted on the margin of her interview sheet her conclusion that Davis would not be filing a joint bankruptcy petition with her husband: "Not filing: separate households."  She told Davis that the debtor was not required to disclose her husband's income in the bankruptcy case.  The bankruptcy lawyer correctly

7

completed schedule I listing the debtor as separated,[19] as well as question 16 on the statement of financial affairs, listing John Bourgoyne as the debtor's estranged husband. Thus, the debtor made no secret of her marital status. The debtor's bankruptcy documents therefore provided all relevant information and listed all property including community and separate property of the union, excluding her husband's income *based upon advice of counsel*. That negates a finding that Davis intended to defraud anyone. An "explanation by the debtor that he acted on advice of counsel, who, was in turn fully aware of all relevant facts, generally rebuts an inference of fraud." *In re Dubrowsky*, 244 B.R. 560 (E.D.N.Y. 2000), *citing In re Mascolo*, 505 F.2d 274 (1st Cir. 1974). *See also Hibernia Nat'l Bank v. Perez*, 124 B.R. 704, 710 (Bankr. E.D. La. 1991), *aff'd,* 954 F.2d 1026 (5th Cir.1992) ("if an item is omitted upon the honest advice of counsel, to whom the debtor has disclosed all pertinent facts, the item will not be deemed falsely omitted").

Neither the trustee[20] nor Tower were misled about Davis's marriage, since Davis made plain in her testimony at the meeting of creditors – which Tower's representative attended — that she was married. Tower could have raised the omission of the debtor's spouse's income from the means test in a motion under 11 U.S.C. §707(b) and attempted to force the debtor to convert her chapter 7 case to a chapter 13 personal reorganization, a more direct remedy for the conduct of which it complains.[21] Instead, Tower chose the more drastic approach of trying to prevent the debtor's discharge.

---

[19] See footnote 4, above.

[20] The trustee did not object to Davis's discharge or join in Tower's objection.

[21] Section 707(b) allows a party in interest to seek to convert a debtor's chapter 7 case to chapter 13 if the evidence shows that filing a chapter 7 case was an abuse. Tower had ample time to file that motion, which is due within 60 days from the March 16, 2010 meeting of creditors. Fed. R. Bankr. P. 1017(e)(1). Tower filed its complaint in this adversary proceeding on May 17, 2010, essentially the same deadline for section 707(b) motions in this case.

Tower expended significant effort trying to prove that Davis was not actually living separately from her husband either before or after she filed bankruptcy, but falsely claimed to have been separated to avoid disclosing his income to the court and her creditors. The evidence does not support that contention. The debtor's testimony about her abusive marriage was both credible and persuasive and supports a finding that Davis and her husband did not live together continuously before or after bankruptcy. The couple's reconciliation after bankruptcy through a church counseling program does not undermine this conclusion.

Finally, the principal premise supporting Tower's theory of the case, that Davis omitted her marital status to avoid disclosing her husband's income and thereby escaped a mean test challenge, is utterly implausible given her lack of legal training and testimony concerning the significance of the means test. And more to the point: including Bourgoyne's income would not have prevented Davis from qualifying for chapter 7 relief. His social security statement reflected that Bourgoyne earned only $13,224 in 2009, and Tower offered no credible evidence that his income for the applicable prepetition period significantly exceeded that figure.[22] Using Bourgoyne's 2009 income, and adding $500 to the total, Davis estimated that their joint annualized current monthly income still would have been below the applicable median income, leaving Davis eligible for chapter 7. This suggests that Bourgoyne's income was of minimal value and would not have

---

[22] In an effort to prove that Bourgoyne's income for means test purposes was higher than $13,224, Tower tried to project Bourgoyne's 2010 income by extrapolating from the October 21, 2010 paycheck in evidence. However, the applicable period for computing average monthly income for the means test is "the six calendar months prior to filing the bankruptcy case, ending on the last day of the month before the filing." Official Form 22A (Chapter 7) (04/10), p. 2. Consequently, only Bourgoyne's January 2010 income would have been relevant for calculating his means test income.

9

affected the outcome on the means test.[23] That fact also supports a finding and conclusion that Davis lacked fraudulent intent. *In re Schermer*, 2003 WL 24027471 at *3 (Bankr. M.D. La. September 23, 2003) (in an objection under section 727(a)(4), the value of omitted assets may be weighed in determining the debtor's intent as well as for materiality purposes); *In re Forness*, 334 B.R. 724, 731 (Bankr. M.D. Fla. 2005) (fraudulent intent under §727(a)(4)(A) will not be presumed, particularly when discrepancies in schedules involve items of little value to the estate). A false oath relating to an asset of minimal value may "tend to vitiate the debtor's fraudulent intent." *In re Arcuri*, 116 B.R. 873, 881 (Bankr. S.D.N.Y. 1990); *In re Smorto*, 2008 WL 699502 at *7 (E.D.N.Y. March 12, 2008); *In re Manis*, 2007 WL 1240297 at *5 (Bankr. E.D. Tenn. April 27, 2007).

The credibility of Davis's testimony and the totality of the other evidence support a finding and conclusion that her errors and omissions resulted from ignorance and reliance on advice of counsel, rather than fraudulent intent. Tower's contention that an unsophisticated debtor, who was the subject of physical domestic abuse, orchestrated a scheme eight months pre-petition to hide the true nature of her marital status and avoid filing a chapter 13 case is far-fetched and in any case finds no support in the record.[24]

Because denial of a debtor's discharge is a harsh sanction, discharge exceptions are "construed strictly against the creditor and liberally in favor of the debtor." *In re*

---

[23] The evidence concerning her husband's medical condition and erratic work history also cast doubt on the materiality of the information Davis omitted from the filing as well as the feasibility of a chapter 13 plan, had Davis and Bourgoyne filed a joint petition with a combined income that required them to convert to chapter 13.

[24] Tower did not subpoena John Bourgoyne to testify at trial to refute the debtor's testimony about the state of her marriage.

*Laughlin*, 602 F.3d 417, 421 (5th Cir. 2010).  The evidence does not support denying this debtor's discharge.

## CONCLUSION

Tower has not carried its burden of proof under 11 U.S.C. §727(a)(4) and so the debtor is entitled to her discharge.

Baton Rouge, Louisiana, March 31, 2011.

**s/Douglas D. Dodd**
DOUGLAS D. DODD
UNITED STATES BANKRUPTCY JUDGE